In re Matthew James TRIERWEILER and Shannon Renee Trierweiler, Debtors.

Randy L. Royal, Trustee, Plaintiff–Appellant,

v.

First Interstate Bank, a Corporation, and Mortgage Electronic Registration Systems, Inc., Defendants–Appellees.

BAP No. WY–11–111.
Bankruptcy No. 10–20499.
Adversary No. 10–02035.

United States Bankruptcy Appellate Panel of the Tenth Circuit.

Dec. 28, 2012.

Stephen Winship (Brad T. Hunsicker with him on the reply brief), of Winship &

Winship, P.C., Casper, WY, for Plaintiff–Appellant.

Timothy M. Stubson of Crowley Fleck, PLLP, Casper, WY (Robert J. Pratte of Fulbright & Jaworski LLP with him on the brief), for Defendant–Appellee First Interstate Bank, a Corporation.

Brent R. Lindahl of Fulbright & Jaworski LLP, Minneapolis, MN (Robert J. Pratte and Bill Greendkye of Fulbright & Jaworski LLP, and Timothy M. Stubson of Crowley Fleck, PLLP, with him on the brief), for Defendant–Appellee Mortgage Electronic Registration Systems, Inc.

Before THURMAN, Chief Judge, BROWN, and SOMERS, Bankruptcy Judges.

SOMERS, Bankruptcy Judge.

Randy L. Royal (the "Trustee") appeals the bankruptcy court's judgment in favor of First Interstate Bank ("FIB") and Mortgage Electronic Registration Systems ("MERS") (collectively "Appellees") on his adversary complaint seeking to avoid the mortgage on the debtors' home. The Trustee attacked the mortgage based on a split-note theory due to MERS's involvement in the transaction. The bankruptcy court rejected the Trustee's position that defining MERS as the mortgagee in the mortgage split the note from the mortgage. It also held that the mortgage was properly recorded and that there was no interest for the Trustee to pursue under 11 U.S.C. § 544(a)(3).[1] We affirm.

## I. Factual Background

On March 16, 2009, Matthew and Shannon Trierweiler (the "Debtors") obtained financing for their home located in Dayton, Wyoming (the "Property") by executing a promissory note in favor of FIB (the "Note"), and a mortgage identifying MERS as mortgagee and nominee for FIB and its successors and assigns (the "Mortgage").[2] The Mortgage was recorded in the applicable county clerk's office on March 20, 2009. Thereafter, FIB sold the Note to Federal National Mortgage Association ("Fannie Mae"), endorsing the Note in blank.[3] Fannie Mae possessed the Note through its document custodian, Bank of New York.[4] Pursuant to the MERS system, because both FIB and Fannie Mae were MERS members, an assignment of the Mortgage to Fannie Mae was not recorded in the county records.[5] MERS continued to hold the Mortgage, but now on Fannie Mae's behalf. By agreement, FIB continued to service the loan for Fannie Mae.[6]

On May 3, 2010, Debtors filed a Chapter 7 petition (the "Petition Date"). A week later, FIB filed a motion for relief from stay to foreclose on the Property (the "RFS Motion").[7] The bankruptcy court held a hearing on the RFS Motion on July 14, 2010, and heard testimony from FIB's collections manager.[8] The parties stipulated that there had been a default on the loan and that there was no equity in the

1. All future references to "Code," "Section," and "§ " are to title 11, United States Code, unless otherwise specified.

2. Note and Mortgage, *in* Appendix to Appellant's Brief ("App.") at 230–45.

3. Trial Tr. at 29–30, *in* App. at 100–01.

4. Transcript of July 14, 2010 Hearing ("RFS Hrg. Tr.") at 23, *in* App. at 350.

5. Trial Tr. at 98–105, *in* App. at 169–76.

6. *Id.* at 34, *in* App. at 105.

7. FIB's RFS Motion, *in* App. at 26–47.

8. RFS Hrg. Tr., *in* App. at 328–69.

Property currently.[9] The day before the RFS hearing, MERS executed an assignment of the Mortgage to FIB, but that assignment had not yet been recorded.[10] FIB presented the assignment at the RFS hearing but withdrew it [11] after the bankruptcy court expressed concern regarding the postpetition assignment [12] and indicated that it would require briefing on the matter.[13] In August 2010, the bankruptcy court denied the RFS Motion, finding that FIB "failed to meet its burden that it was a real party in interest or that it had authority to act on behalf of the real party in interest." [14] The bankruptcy court noted that the Note was in Fannie Mae's possession and that neither the Note nor the Mortgage proved FIB, the loan servicer, had authority to act as an agent for Fannie Mae to foreclose on the Property.[15]

In December 2010, the Trustee filed an adversary complaint against FIB and MERS, seeking avoidance of the Mortgage on the Property because on the Petition Date, the Mortgagee (MERS) was not entitled to enforce the Note since it had been assigned to Fannie Mae. According to the Trustee this resulted in a separation of the Note and Mortgage (*i.e.*, MERS held the Mortgage, while Fannie Mae held the Note), rendering the Mortgage unenforceable and the Note unsecured.[16] The parties filed cross-motions for summary judgment. On April 7, 2011, the bankruptcy

9. *Id.* at 7, *in* App. at 334.

10. Assignment of Mortgage, *in* App. at 295.

11. RFS Hrg. Tr. at 31, *ll.* 23–25, *in* App. at 358 ("I would be willing to withdraw our offer of that [ ] if that would resolve that issue about us briefing it.").

12. *Id.* at 6, *ll.* 9–15, *in* App. at 333 ("And what I am going to do is get the United States trustee involved due to the fact that we have what appears to be—could be some concerns the [United States Trustee's Office] would have with respect to the automatic stay, with respect to a[ ] purported unsecured creditor now attempting to place itself in a secured position after the bankruptcy had been filed.").

13. *Id.* at 31, *in* App. at 358.

14. Order Denying [FIB]'s Motion for Relief From the Automatic Stay (the "RFS Order") at 4, *in* App. at 53.

15. On December 13, 2010, FIB filed a second motion for relief from stay on the grounds that FIB had obtained possession of the Note from Fannie Mae and an assignment of the Mortgage from MERS. FIB's Second Motion for Relief from Stay, Bankruptcy Dkt., No. 37, *in* App. at 7. Debtors initially opposed the motion, Debtors' Objection to Motion to Modify Stay, Bankruptcy Dkt., No. 40, *in* App. at 8, but that opposition was later withdrawn and the motion granted on March 21, 2012, after the filing and resolution of the adversary complaint from which the Trustee appeals. *See* Debtors' Withdrawal of Objection, Bankruptcy Dkt., No. 80 and Order Granting Relief from Automatic Stay, Bankruptcy Dkt. No. 82, *in* App. at 13. We requested the parties to brief whether the appeal was thereby rendered moot. After reviewing the briefs, we conclude that the appeal is not moot. In the briefs, the parties informed the court that the Property was sold at foreclosure sale to FIB and the deed has been issued to FIB. The Mortgage was thereby merged into FIB's title, precluding the Trustee from preserving the Mortgage for the benefit of the estate. However, because FIB is a party to this litigation, there remains the possibility that the Trustee can recover the proceeds of the Mortgage lien from FIB, if the Trustee prevails on appeal. 11 U.S.C. § 550(a). The appeal therefore is not moot. *In re BCD Corp.*, 119 F.3d 852, 856–57 (10th Cir.1997).

16. Complaint to Avoid Lien at 5, ¶ 16, *in* App. at 57 ("On the [Petition] Date, the Mortgagee under the Mortgage was not entitled to enforce the Note because the bearer instrument, *i.e.*, the Note, was held by Fannie Mae. Although the Mortgage was recorded, the inability of the Mortgagee to enforce the Mortgage resulted in the Mortgagee holding an unenforceable security interest in the Property on the [Petition] Date."). This argument is commonly known as the "split-note" theory.

court denied both motions for summary judgment, finding that there was a genuine issue as to the relationship between the lenders and MERS, which prevented the court from making an ultimate determination as a matter of law.[17]

On November 21, 2011, after a trial, the bankruptcy court entered judgment in FIB's and MERS' favor (the "Judgment") and concluded that (1) MERS was acting on behalf of FIB in its capacity as nominee, (2) the Mortgage was properly recorded prior to the Petition date, (3) the Trustee could not avoid the transfer of the Note and an interest in the Mortgage to Fannie Mae since it was a transfer of a perfected mortgage in which the Debtors had no interest, and (4) the Debtors did not have any equity interest in the Property which the Trustee could pursue under the strong-arm statute.[18] The bankruptcy court implicitly rejected the Trustee's "split-note" argument.

The Trustee appeals the Judgment.[19] After evaluating the Trustee's brief, the Court has analyzed this appeal as presenting two primary issues: (1) whether the bankruptcy court correctly rejected the Trustee's theory that use of the MERS recording system split the Note from the Mortgage giving rise to avoidance rights

under § 544; and (2) whether the law of the case doctrine mandated finding the Mortgage unenforceable.

## II. Appellate Jurisdiction and Standard of Review

■ This Court has jurisdiction over this appeal because: the appeal was timely filed pursuant to Rule 8002(a) of the Federal Rules of Bankruptcy Procedure; the challenged order is a final order;[20] and no party has elected to have the appeal heard by the district court as required by 28 U.S.C. § 158(c).

■ We review the bankruptcy court's determination that the Trustee may not avoid a mortgage under § 544 *de novo*.[21] Likewise, we review the bankruptcy court's determination as to the applicability of the law of the case doctrine on appeal *de novo*.[22]

## III. Discussion

### A. The bankruptcy court correctly determined that the Trustee is not entitled to avoid the Appellees interests under § 544.

#### 1. The Trustee's split-note theory.

■ The Trustee acknowledges the Debtors' execution of the Note in favor of

---

17. Order Denying Plaintiff's Motion for Summary Judgment and Defendant's Motion for Summary Judgment at 3, *in* App. at 66.

18. *See* Opinion on Complaint (the "Appealed Order") at 9, 15, *in* App. at 378, 384.

19. Notice of Appeal, *in* App. at 387–88.

20. A decision is considered final "if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 712, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996) (quoting *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945)). Here, the bankruptcy court's judgment leaves nothing further for the lower

court's consideration. Thus, the order of the bankruptcy court is final for purposes of review. *See also Geygan v. World Savs. Bank, FSB (In re Nolan)*, 383 B.R. 391, 393 (6th Cir. BAP 2008) (an order granting a trustee's avoidance of a mortgage lien is a final order).

21. *Hamilton v. Wash. Mut. Bank FA, (In re Colon)*, 376 B.R. 33, 35 (10th Cir. BAP 2007) (the issue of lien avoidance under § 544 is a mixed question of law and fact that is reviewed *de novo*), *rev'd on other grounds*, 563 F.3d 1171 (10th Cir.2009) (citing *Lindquist v. Household Indus. Fin. Co. (In re Vondall)*, 364 B.R. 668, 670 (8th Cir. BAP 2007)).

22. *Wilmer v. Bd. of County Comm'rs*, 69 F.3d 406, 409 (10th Cir.1995).

FIB and their grant of the Mortgage to secure that obligation. He also acknowledges that the Mortgage was recorded in the Sheridan County land records and that under Wyoming law, recording the Mortgage gave the Trustee notice of its existence. Generally, proper recording would preclude avoidance of a mortgage lien under § 544. But in this case, the Trustee nevertheless seeks to avoid the Mortgage, relying upon the split-note theory to attack the efficacy of the Mortgage based upon MERS' role as Mortgagee and the transfer of the Note to Fannie Mae. In Wyoming, since a mortgage is only an incident to the debt it secures, a transfer of a note carries with it the mortgage security and operates as an equitable assignment of the mortgage, unless it is agreed otherwise.[23] For there to be bifurcation as the result of a transfer, clear evidence of intent to bifurcate is required.[24] And, when the note and mortgage are split, the result is "a practical loss of efficacy of the mortgage" and "the note becomes, as a practical matter, unsecured."[25] The Trustee's theory is that a split occurred between the Note and the Mortgage and he may therefore avoid the ineffective Mortgage under § 544.

## 2. The MERS mortgage recording system.

Examination of this theory requires an understanding of the MERS system of mortgage recording. The Nebraska Supreme Court succinctly describes the system as follows:

> MERS is a private corporation that administers the MERS System, a national electronic registry that tracks the transfer of ownership interests and servicing rights in mortgage loans. Through the MERS System, MERS becomes the mortgagee of record for participating members through assignment of the members' interests to MERS. MERS is listed as the grantee in the official records maintained at county register of deeds offices. The lenders retain the promissory notes, as well as the servicing rights to the mortgages. The lenders can then sell these interests to investors without having to record the transaction in the public record. MERS is compensated for its services through fees charged to participating MERS members.[26]

The MERS system was designed to facilitate the transfer of notes and accompanying mortgages and deeds of trust because such transfers had become cumbersome under the traditional recording procedures.[27] The system tracks transfers of promissory notes and changes in loan servicers.[28] In a mortgage loan transaction, MERS acts as the mortgagee and holder of the title to the security interest in a representative capacity as the agent (nominee) of the lender and the lender's successors and assigns.[29] Subsequent transfers of the note as well as assignments of ser-

23. *Bradburn v. Wyo. Trust Co. of Casper*, 51 Wyo. 73, 63 P.2d 792, 797 (1936).

24. *In re Bird*, No. 03–52010–JS, 2007 WL 2684265, at *4 (Bankr.D.Md. Sept. 7, 2007).

25. Restatement (Third) of Prop.: Mortgages § 5.4 cmt. a (1997).

26. *Mortgage Elec. Registration Sys., Inc. v. Neb. Dept. of Banking & Fin.*, 270 Neb. 529, 704 N.W.2d 784, 785 (2005).

27. *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1039 (9th Cir.2011).

28. *Jackson v. Mortgage Elec. Registration Sys., Inc.*, 770 N.W.2d 487, 490–91 (Minn.2009); *Cervantes*, 656 F.3d at 1038.

29. *Cervantes*, 656 F.3d at 1039.

vicing rights are tracked in the MERS database, but are not recorded in the public records, since notes are not recorded.[30] Upon transfer of a note secured by a mortgage, there is no separate assignment of the security interest and there is no change in the mortgagee, since MERS remains the mortgagee and holder of legal and record title to the mortgage on behalf of the new lender, as successor or assign of the original lender.[31] Both FIB and Fannie Mae are members of MERS.[32]

The loan transactions at issue in this case reflect this arrangement. The Mortgage states that MERS "is the mortgagee under this Security Instrument" and that it is "a separate corporation that is acting solely as nominee for Lender [First Interstate Bank] and Lender's successors and assigns."[33] The Mortgage further states:

> Borrower understands and agrees that MERS holds only legal title to the interest granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property, and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.[34]

The original Lender was FIB, and MERS was the Mortgagee, as nominee. The Mortgage was recorded. The Mortgage provides for sale of the Note one or more times without prior notice to Borrowers (the Debtors).[35] FIB sold the Note to Fannie Mae by endorsement in blank, but FIB continued as servicer. Because both Fannie Mae and FIB were MERS members, an assignment of the Mortgage to Fannie Mae was not recorded, and MERS held the Mortgage on behalf of FIB and its successors and assigns.

### 3. There is no split between the Note and the Mortgage.

The Trustee argues that a split between the Note and Mortgage has occurred, nullifying the Mortgage and rendering the Note unsecured, because on the Petition Date, Fannie Mae held the Note, while MERS held the Mortgage.[36] The Trustee also appears to argue, under the split-note theory, that the Mortgage was invalid *ab initio* because MERS was the Mortgagee and FIB was the noteholder.[37] Appellees respond that the Tenth Circuit recently rejected the split-note theory when MERS is the named mortgagee in *Commonwealth Property Advocates, LLC v. Mortgage Electronic Registration Systems, Inc.*[38] The Trustee counters that Appellees' reliance upon *Commonwealth* is misplaced because *Commonwealth* is distinguishable in that: (1) the plaintiff was the borrower's successor, not a bankruptcy trustee, (2) the security instrument was a deed of trust, not a mortgage, and (3) Utah and Wyoming law differ. The Trustee contends that *Commonwealth* involved a typical wrongful foreclosure case, which is distinct from a claim for avoidance of a mortgage. He claims that this appeal

30. *Id.*

31. *Jackson,* 770 N.W.2d at 491.

32. Trial Tr. at 102, *ll.* 6–18, *in* App. at 173.

33. Mortgage at 1, *in* App. at 233.

34. *Id.* at 3, *in* App. at 235.

35. *Id.* at 10, ¶ 20, *in* App. at 242.

36. Appellant's Brief at 11–12.

37. *Id.* at 20–21.

38. 680 F.3d 1194 (10th Cir.2011).

does not involve a typical "split note theory."

In *Commonwealth*, the plaintiff had acquired from defaulting borrowers three pieces of real property in Utah that were subject to deeds of trust in which MERS was named the beneficiary as nominee for the lenders. Each of the notes had been securitized and the securities sold on the open market. Suit was filed to prevent foreclosure. The plaintiff argued that MERS and the other defendants had no authority to foreclose because, since the deeds of trust follow the debt, foreclosure could be pursued only with authorization by every investor who had purchased an interest in the securitized notes. The defendant lenders and MERS filed motions to dismiss for failing to state a claim for relief, and the district court granted the motions. The Tenth Circuit affirmed, rejecting the claim that defendants had no authority to foreclose because the debt was transferred. It held that because Utah's statute stating the security follows the debt says nothing about who is or is not authorized to foreclose on a property and the deeds of trust explicitly gave MERS the right to foreclose on behalf of "Lender and Lender's successors and assigns," MERS did have authority to foreclose. The Tenth Circuit concluded that in Utah, parties were not prohibited from contracting for these types of arrangements.

Although distinguishable, *Commonwealth* is sufficiently analogous to control. The fact that *Commonwealth* involved deeds of trust, as opposed to mortgages, does not lead to a different result—both are instruments transferring interests in real property as collateral for a debt. Although there is a distinction between a wrongful foreclosure case and an avoidance action, the Trustee nonetheless predicates his right to avoid the Mortgage as ineffective based on its separation from the Note, the same theory rejected in *Commonwealth*.

*Commonwealth* directs courts to look at state statutes in determining whether a MERS-type mortgage is permissible. In Wyoming, as in Utah, the security follows the note.[39] The Trustee has pointed to no Wyoming authority that prohibits the loan originator from agreeing to have someone other than the beneficial owner of the debt hold the mortgage and enforce the debt as its agent. We note that Wyoming has a statute that contemplates conveying real estate to a mortgagee in a representative capacity, which suggests that Wyoming allows original parties to a note and mortgage to name someone other than the noteholder as the mortgagee.[40] The Trustee nevertheless contends that he can avoid the Mortgage under the theory that there is no named mortgagee since the Mortgage impermissibly denotes MERS as both Mortgagee and as nominee for the Lender and its successors and assigns. The Trustee is in effect contending that MERS is granted two independent and conflicting roles—mortgagee and nominee. But this is not what the Mortgage states. Under the Mortgage, Borrowers conveyed an interest in their property to "MERS (solely as nominee for Lender and Lender's successors and assigns)." Nominee is defined in Blacks Law Dictionary as "[a] person designated to act in place of another, usually in a very limited way [or a] party who holds bare legal title for the benefit of others[.]"[41] In other words, as

---

39. *Bradburn v. Wyo. Trust Co. of Casper*, 51 Wyo. 73, 63 P.2d 792 (1936).

40. *See* Wyo. Stat. Ann. § 34–2–122.

41. Black's Law Dictionary 1072 (9th ed. 2009).

nominee for the lender and its successors and assigns, MERS is a limited agent.[42] That agency relationship is addressed in the MERS membership rules which require MERS to comply with the instructions of the holder of the Note.[43] MERS' actions were subject to the direction of either FIB, as the servicer, or Fannie Mae, as the note holder. As stated above, there is nothing impermissible in this arrangement.

We conclude there is no split between the Note and Mortgage arising from MERS being named as Mortgagee on behalf of the original lender and its successors and assign. At all times, the Note and the Mortgage were united.

### 4. Wyo. Stat. Ann. § 34–2–122 does not render the Mortgage ineffective as security for the Note.

■ The Trustee also attacks the Mortgage's effectiveness as security for the Note for not being recorded in accordance with Wyoming law, specifically Wyo. Stat. Ann. § 34–2–122.[44] No similar Utah statute was discussed in *Commonwealth.* Wyo. Stat. Ann. § 34–2–122 states, in pertinent part:

> **In all instruments conveying real estate, or interests therein, in which the grantee is described as trustee, agent, or as in any other representative capacity, the instruments of conveyance shall also define the trust or other agreement under which the grantee is**

**acting** . . . . For purposes of this section, it shall be sufficient to define a trust by providing in the text of the instrument the name of the trustee or trustees and the name of the trust, the date of the trust or other agreement, or by referring . . . to the instrument, order, decree or other writing, which is of public record in the county in which the land so conveyed is located and in which the required information appears; otherwise the description of a grantee in any representative capacity in each instrument of conveyance shall be considered and held to be a description of the grantee, only, and shall not be notice of any trust, agency or other representative capacity of the grantee who shall be held as vested with the power to convey, transfer, encumber or release the affected title.[45]

The effect of noncompliance with Wyo. Stat. Ann. § 34–2–122 appears in Wyo. Stat. Ann. 34–2–123, which states, in pertinent part:

> All instruments of conveyance to, or transfer, encumbrance or release of, lands or any interest therein within the state of Wyoming, which name a grantee in a representative capacity[,] and which fail to provide the information required by W.S. 34–2–122, **shall cease to be notice of any trust or representative capacity of the grantee and shall be considered and held to be a description of the grantee only, who shall be**

---

**42.** *Martinez v. Mortgage Elec. Registration Sys., Inc. (In re Martinez)*, 444 B.R. 192, 204–206 (Bankr.D.Kan.2011).

**43.** MERSCORP, INC. Rules of Membership at 12–13, *in* App. at 262–63. *See also Martinez,* 444 B.R. at 205.

**44.** The Trustee has made no allegations that the Mortgage did not comply with the formality requirements set forth in Wyo. Stat. Ann. § 34–1–142(a), which requires instruments

transferring title to real property to disclose: the name of the grantor and grantee, the date of transfer, date of sale, a legal description of the property transferred, the actual full amount paid or to be paid for the property, terms of sale and an estimate of the value of any nonreal property included in the sale.

**45.** Wyo. Stat. Ann. § 34–2–122 (emphasis added).

held to have individually, the full power to convey, transfer, encumber or release the affected title and no conveyance, transfer, encumbrance or release shall thereafter be questioned by anyone claiming with respect to the affected property, as a beneficiary or by anyone claiming by, through, or under an undisclosed beneficiary, provided that this section shall not apply if the grantee or any beneficiary or beneficiaries or other properly interested person shall file for record in the proper office of the county in which the land is situated, a statement, duly verified, describing the affected lands and interest therein, setting forth the interest of the person or entity making the statement, defining the representative relationship, and setting forth the information required by W.S. 34–2–122, or referring by proper description to an instrument of public record in the county in which the matters shall appear.[46]

The Trustee argues that because the Mortgage failed to define the "other agreement" as required by Wyo. Stat. Ann. § 34–2–122, MERS alone must be treated as the mortgagee, thereby splitting the Note from the Mortgage when the loan was made by FIB and when the Note was transferred to Fannie Mae. As a result, according to the Trustee, he did not, "as of the Filing Date, have actual or constructive notice of the interest of any entity in the Property other than MERS, including Fannie Mae—the undisclosed 'true' mortgagee because Fannie Mae was the owner of the Note."[47] Therefore, since MERS was the Mortgagee but not the Noteholder, the Mortgage cannot be enforced by

MERS, the bankruptcy court erred in finding MERS was acting on behalf of the lender, and the Trustee may avoid the Mortgage under § 544(a).[48]

Appellees contend the Mortgage satisfies Wyo. Stat. Ann. § 34–2–122 because MERS is identified as "nominee for the Lender and Lender's successors and assigns" in three separate places in the Mortgage. It also provides the name and address for FIB as Lender and the name, address, and phone number for MERS.

Only one published decision has discussed Wyo. Stat. Ann. §§ 34–2–122 and 123.[49] It held the statutes inapplicable to a deed conveying property to a revocable trust, rather than the trustee of the trust. In doing so, it implicitly approved one of the parties' contentions that "this law was enacted to address attempts during the Depression era where persons attempted to cloud title to real property in order to defeat creditors' claims, [through conveying] property to individuals in trust without describing the trust, which usually did not in fact exist."[50] Because of the paucity of law on these statutes, this Court will have to surmise what the Wyoming Supreme Court would rule if it were faced with this issue.

Fortunately, as pointed out by the parties in their briefs, courts of other states have construed similar statutes. The Colorado Supreme Court identified that the intent of the Colorado legislature in enacting legislation similar to that which the Trustee relies upon was "to give credence to actions of a trustee in selling, pledging as collateral, or otherwise dealing with trust property," thereby counteracting

---

**46.** Wyo. Stat. Ann. § 34–2–123 (emphasis added).

**47.** Appellant's Brief at 15.

**48.** *Id.* at 15–16.

**49.** *In re Estate of Lohrie,* 950 P.2d 1030 (Wyo. 1997).

**50.** *Id.* at 1033.

"the tendency of property to be considered inalienable when it had an 'as trustee' grantee in its chain of title."[51] Based upon examination of case law from other jurisdictions, the Colorado court concluded the statutes "to be notice statutes that prevent the undisclosed beneficiaries from contesting the interest of subsequent takers who relied on the non-conforming instrument."[52] The Ohio Supreme Court, one of the courts construing similar legislation as a notice statute, elaborated upon this finding by stating, "[i]t provides that certain language in a deed or mortgage which purports to create an equitable interest will not be sufficient to notify other parties of limitations on the grantee's or mortgagee's powers."[53] Given this function, the Ohio Supreme Court held that noncompliance does not "defeat the creation of an equitable interest," it simply affects enforcement of that interest by those protected by the statute.[54] Even though the Colorado statute, like the Wyoming statute, required that the instrument conveying real estate to a trustee "name the beneficiary so represented **and** define the trust" by proper reference to public record,[55] the Colorado Supreme Court construed the statute as requiring "designation of the trust's beneficiaries **or** [reference] to a public record containing such information."[56]

We believe the Wyoming Supreme Court would likely conclude Wyo. Stat. Ann. § 34–2–122 is a notice statute and does not preclude the Lender, FIB, and its assignee, Fannie Mae, from having acquired equitable interests in Debtors' Property under the Mortgage. First, we conclude that despite the apparently mandatory requirement of Wyo. Stat. Ann. § 34–2–122, the Wyoming courts would not find a violation of the statute because a document defining MERS' capacity is not of record. The Mortgage names MERS as grantee "solely as nominee for Lender and Lender's successors" and includes the name and address of the Lender and the name, address, and phone number of MERS. The Mortgage therefore gives notice of the identity of the Lender initially acquiring an equitable interest and information necessary to contact the Lender, as well as MERS, to ascertain the state of their respective interests. The notice function of Wyo. Stat. Ann. § 34–2–122 is satisfied even though MERSCORP. INC.'s "RULES OF MEMBERSHIP" were not filed of record.

Moreover, we conclude that even if the requirements of Wyo. Stat. Ann. § 34–2–122 were not satisfied, the Note and Mortgage were not split, resulting in an unenforceable mortgage. The cited statute is a notice statute. If MERS had transferred its interest to a good faith purchaser, Wyo. Stat. Ann. § 34–2–123 would preclude Lender and its assigns from asserting their interests against MERS' transferees.[57] But that is not the situation before the Court. MERS did not make such a transfer; Fannie Mae acquired its equitable interest in the Mortgage from FIB knowing MERS would continue as the

51. *Lagae v. Lackner,* 996 P.2d 1281, 1285 (Colo.2000).

52. *Id.* at 1286.

53. *Marital Trust Under Will of Casto v. Lungaro,* 22 Ohio St.3d 298, 490 N.E.2d 599, 600 (1986).

54. *Id.*

55. Colo.Rev.Stat. Ann. § 38–30–108; *Lagae,* 996 P.2d at 1284 (emphasis added).

56. *Lagae,* 996 P.2d at 1285 (emphasis added).

57. As discussed below, the Trustee may not avoid the transfer from FIB to Fannie Mae under § 544 because it was not a transfer of Debtors' Property.

Mortgagee on its behalf. And neither Wyo. Stat. Ann. §§ 34–2–122 nor –123 say failing to provide the information required by Wyo. Stat. Ann. § 34–2–122 nullifies the recording of the Mortgage or defeats the creation of equitable interests thereunder. As stated above, a similar Ohio statute has been construed not to invalidate equitable interests held by the grantee for the benefit of third parties. The Trustee is attempting to use a notice statute for an unintended purpose.

The MERS system was developed to facilitate transfers of notes secured by mortgages. We do not believe that the Wyoming Supreme Court would hold that noncompliance with Wyo. Stat. Ann. § 34–2–122 results in the consequences contrary to the intent of the MERS system, particularly where the Mortgage fully discloses the identity and contact information for both MERS and FIB.

### 5. The Mortgage is not ineffective because of the failure to record the assignment to Fannie Mae.

Finally, the Trustee may be arguing, independently of the MERS system and Wyo. Stat. Ann. § 34–2–122, that the Note and Mortgage are split because of failure to record the assignment of the Mortgage to Fannie Mae. The Court rejects this argument. The mortgage-follows-the-note rule gave Fannie Mae an equitable assignment of the Mortgage, not an equitable mortgage. While a mortgage's enforceability is based on it being recorded, an assignment's enforceability is tied to the assigned mortgage's recorda-

tion.[58] The Trustee has identified no Wyoming law that says an assignment of a mortgage is invalid if it is not recorded, and we have found none. Even if there was a requirement to record assignments in Wyoming, failing to record an assignment would not have the effect of invalidating the underlying mortgage because statutes that require recording assignments of mortgages are intended to govern priorities between lenders, not the validity of liens.[59]

### 6. The Trustee has no avoidance rights under § 544.

With this background, we turn to the question of whether the Trustee, as he contends, may under § 544 avoid the Mortgage as an ineffectual lien on Debtors' Property. We also consider, as did the bankruptcy court, whether the Trustee may avoid the transfer of an interest in the Mortgage to Fannie Mae. Subsection (a) of § 544 provides, in relevant part:

> The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—
>
> > (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple

---

**58.** *See Hamilton v. CitiMortgage, Inc. (In re Lieurance),* 458 B.R. 757, 761–64 (Bankr. D.Kan.2011) (note is secured as a matter of law without regard to when the mortgage was assigned or the assignment recorded; one who acquires a note secured by a recorded mortgage is not the holder of a secret equity if the assignment is not recorded).

**59.** *See Noland v. Wells Fargo Bank N.A. (In re Williams),* 395 B.R. 33, 42–43 (Bankr. S.D.Ohio 2008) (failure to record an assignment of a mortgage in Ohio does not terminate or extinguish the underlying mortgage because assignments of mort ages are intended to govern priorities between lenders, not the validity of liens).

contract could have obtained such a judicial lien, whether or not such a creditor exists;

... or

(3) a bona fide purchaser of real property ... from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.[60]

Section 544 grants the trustee the status of a hypothetical lien creditor of the debtor or bona fide purchaser of real property from the debtor with the power to avoid liens that a lien creditor or bona fide purchaser could avoid, subject to the applicable state's constructive notice law.[61] In other words, a trustee cannot avoid a lien if he has constructive knowledge of it.[62] The bankruptcy court concluded that the Mortgage was properly recorded prior to the Petition Date, thus the Trustee had constructive knowledge of it, defeating avoidance.[63] We agree that the Trustee may not avoid the Mortgage.

We first reject the Trustee's contention that the bankruptcy court erred when analyzing his § 544 claim as requiring a transfer of an interest in the Debtors' property. According to the Trustee, under §§ 544(a)(1) and (a)(3), he may avoid the Mortgage because the mortgage lien is unenforceable and may therefore be avoided by a judgment lien creditor or a good faith purchaser. He cites Kasparek[64] for the proposition that § 544 empowers the Trustee to avoid interests in a debtor's property, as well as transfers of the debtor's property. In Kasparek a panel of this Court held that the trustee under § 544(a) could avoid an unrecorded equitable interest in the debtor's property. That interest had been retained by the debtor's father when, for estate planning purposes, he transferred undivided interests in his farm property to his sons, including the debtor, but continued to operate the farm.

But this principle does not entitle the Trustee to the relief he seeks. As discussed above, the Mortgage is not unenforceable. The Note and Mortgage were not split, there was no violation of Wyo. Stat. Ann. 34-2–122, and Wyoming's recording statutes did not require that Fannie Mae's interest in the Mortgage be recorded, since constructive notice of an assignment is tied to the assigned mortgage's recordation. The recording of the Mortgage gave the Trustee constructive notice of the lien. The construction of § 544 adopted in Kasparek has no applicability to the facts of this case. The Trustee is seeking to avoid a properly recorded Mortgage, not an unrecorded equitable interest encumbering the Debtors' Property.

■ We agree with the bankruptcy court that the Trustee cannot avoid the transfer of the Note and an interest in the Mortgage to Fannie Mae. Under § 544, the Trustee may avoid only transfers of property of the Debtors. But the Debtors had no property interest in the Note or the

---

**60.** 11 U.S.C. § 544(a) (emphasis added).

**61.** *Watkins v. Watkins*, 922 F.2d 1513, 1514 (10th Cir.1991).

**62.** *Colon*, 563 F.3d 1171, 1186 (10th Cir. 2009) (trustee cannot avoid the mortgage under § 544(a)(3) because a purchaser of the debtor's house would be on constructive notice of facts that would require a reasonably

prudent person to investigate and then determine that the bank's mortgage burdened the property).

**63.** Appealed Order at 9, *in* App. at 378.

**64.** *Morris v. Kasparek (In re Kasparek)*, 426 B.R. 332, 343–44 (10th Cir.BAP2010).

Mortgage when the Note was transferred to Fannie Mae. *In re Halabi,*[65] a decision of the Eleventh Circuit Court of Appeals followed by two Kansas bankruptcy courts,[66] illustrates the application of this principle when a mortgage granted by a debtor is subsequently assigned. In *Halabi,* the Chapter 7 trustee filed an adversary proceeding seeking a determination of the amount, priority and validity of liens on debtor Halabi's real property located in Florida, as well as to set aside certain postpetition transfers. Halabi had granted a mortgage in real property to a lender at least two years before he filed bankruptcy, and the lender had in turn timely and properly perfected the note and mortgage. The initial lender then assigned the note and mortgage to a second creditor, who in turn assigned the mortgage and note to Atlantic Mortgage & Investment Corporation ("Atlantic"). Atlantic failed to record the transfer of the mortgage and note in the public records prior to the date Halabi filed bankruptcy. After the bankruptcy case was filed, Atlantic then transferred the mortgage to a fourth lender. As a result of that transfer, the trustee attempted to avoid the mortgage pursuant to both §§ 544 and 549. The Eleventh Circuit held that the trustee could not prevail under § 544 because:

> the assignment of the mortgage, once the original grant by the mortgagor to the mortgagee has been perfected, does not involve a "transfer of the property of the debtor" that would activate the Trustee's strong-arm powers under § 544. The Trustee is seeking to avoid the transfer of the perfected mortgage,

in which the debtor has no interest. The transaction under scrutiny here does not involve the transfer of the debtor's real property, to which the mortgage attaches.[67]

We find the *Halabi* rationale persuasive and applicable to this case. The Trustee cannot avoid the transfer of an interest in the Mortgage to Fannie Mae since it was not a transfer of property of the Debtors.

The Trustee argues that *In re Halabi* is distinguishable because in that case notice was not an issue as the note and mortgage were always held by the same party. Moreover, according to the Trustee, Florida recognizes the validity of equitable mortgages and allows an assignee of a mortgage to be equitably subrogated to the rights of its assignor for purposes of perfection, whereas Wyoming has no similar statute and is reluctant to recognize equitable mortgages.[68] These arguments, even if correct, do not warrant finding *In re Halabi* inapposite. The rule applicable here is the fundamental holding that only transfers of property which may be avoided under § 544 are transfers of a debtor's property. The Trustee ignores the fact that when the Note was transferred to Fannie Mae, it was an asset of the creditor, and the transfer of an interest in the Mortgage was merely an assignment from one creditor to another. We conclude the bankruptcy court correctly determined that the Trustee was not entitled to avoid the transfer of an interest in the Mortgage to Fannie Mae under § 544 because the subject of the transfer was not property of the Debtors.

---

**65.** *Kapila v. Atl. Mortgage & Inv. Corp. (In re Halabi),* 184 F.3d 1335 (11th Cir.1999).

**66.** *Hamilton v. CitiMortgage, Inc. (In re Kunze),* 459 B.R. 468 (Bankr.D.Kan.2011); *Hamilton v. CitiMortgage, Inc. (In re Lieurance),* 458 B.R. 757 (Bankr.D.Kan.2011).

**67.** *Halabi,* 184 F.3d at 1337.

**68.** Appellant's Brief at 28.

For the foregoing reasons, we affirm the bankruptcy court's holding that the Trustee may not avoid the Mortgage or the transfer of the Note and an interest in the Mortgage to Fannie Mae under § 544.

## B. The law of the case doctrine did not mandate finding the Mortgage unenforceable.

 "The law of the case doctrine posits that '[w]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.' " [69] It "applies to issues previously decided, either explicitly or by necessary implication." [70] The Tenth Circuit recognizes three narrow grounds to depart from this rule: (1) when the evidence in a subsequent trial is substantially different; (2) when controlling authority has subsequently made a contrary decision on the law applicable to such issues; or (3) when the decision was clearly erroneous and would work a manifest injustice.[71] The law of the case doctrine, however, is not an "inexorable command," but a rule to be applied with good sense.[72]

 The Trustee argues that the bankruptcy court erred in failing to apply the law of the case, which mandated finding the Mortgage unenforceable. The Trustee contends that the bankruptcy court previously ruled in the RFS Order that FIB was not the real party in interest to enforce the Mortgage, and had implicitly ruled that only Fannie Mae had standing.[73]

He argues that since Fannie Mae appears nowhere in the public record or in the Mortgage, to be consistent, the bankruptcy court should have found that the Mortgage was unenforceable on the Petition Date.

The law of the case doctrine does not apply in this case. The issue decided at the relief from stay hearing was different from those addressed in the avoidance action. FIB's standing to enforce the Note was the primary issue at the RFS hearing, while the validity of the Mortgage was the primary issue in the avoidance action. The rule of law from the RFS Order was a loan servicer, absent evidence that it had authority from the noteholder to act on its behalf, lacked standing to request relief from stay to foreclose on the Property. The rules of law from the Appealed Order were (1) under Wyoming law, naming MERS as the lender's nominee and mortgagee in the Mortgage did not affect its validity,[74] and (2) transfers of a note or a mortgage between lenders do not involve transfers of property of the Debtor, and therefore there were no interests for the Trustee to avoid under § 544(a)(3).

Ruling that "[FIB] failed to meet its burden that it was a real party in interest or that it had authority to act on behalf of the real party in interest [to foreclose]" [75] in no way suggests that the Mortgage was unenforceable. It simply meant that FIB had failed to present evidence that it possessed the Note or that it was the note-

---

**69.** *Mason v. Texaco, Inc.,* 948 F.2d 1546, 1553 (10th Cir.1991) (quoting *Arizona v. California,* 460 U.S. 605, 618, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983)).

**70.** *Guidry v. Sheet Metal Workers Int'l Ass'n,* 10 F.3d 700, 705–06 (10th Cir.1993) (citation omitted).

**71.** *Grigsby v. Barnhart,* 294 F.3d 1215, 1218–19 n. 4 (10th Cir.2002).

**72.** *Mason,* 948 F.2d at 1553 (citing *Major v. Benton,* 647 F.2d 110, 112 (10th Cir.1981)).

**73.** Appellant's Brief at 25–27.

**74.** Appealed Order at 12, *in* App. at 381 (". . . First Bank's use of MERS as the nominee did not modify the secured status of First Bank[.]").

**75.** RFS Order at 4, *in* App. at 53.

holder's agent. The requirements for standing to foreclose include (1) an enforceable interest in the note (*i.e.*, possession of the note), and (2) a perfected mortgage.[76] Because the evidence adduced at the RFS hearing did not prove the first issue, the bankruptcy court did not consider the second issue.[77]

## IV. Conclusion

The Mortgage naming MERS as Mortgagee on behalf of FIB was valid when granted and was properly recorded. There was no invalidating split between the Note and the Mortgage either when the loan transaction closed or when the Note was assigned to Fannie Mae. Therefore the Trustee may not avoid the Mortgage because of alleged invalidity resulting from the splitting of the Note and Mortgage. Further, the Trustee may not avoid the assignment of the Mortgage to Fannie Mae since the transfer was not of an interest in the Debtors' Property. Finally, the law of the case doctrine does not apply under the circumstances of this case. Accordingly, we AFFIRM the bankruptcy court's Judgment.[78]

---

76. *See* Wyo. Stat. Ann. § 34–4–103 (Prerequisites to foreclosure).

77. RFS Order at 4, *in* App. at 53 ("There were allegations and arguments that the presence of MERS on the mortgage [ ] created issues of standing. However, this Court does not need to go further than the initial standing issue of [FIB] to determine this motion.").

78. Because the documents in MERS' addendums were not submitted to the bankruptcy court, we decline to consider them and grant the Trustee's May 18, 2012, motion to strike them. *Allen v. Minnstar, Inc.*, 8 F.3d 1470, 1475 (10th Cir.1993) (appellate review confined to an examination of materials before the lower court at the time the ruling was made). Because Christopher Peterson did not testify nor offer his opinion in this case, we deny MERS request to take judicial notice of the addendum materials to discredit Peterson. *United States v. Ahidley*, 486 F.3d 1184, 1192 n. 5 (10th Cir.2007) ("[W]e may exercise our discretion to take judicial notice of publicly-filed records in our court and certain other courts concerning matters that bear directly upon the disposition of the case at hand.").