FILED

U.S. Bankruptcy Appellate Panel
of the Tenth Circuit

**July 24, 2015**

**Blaine F. Bates**
**Clerk**

UNPUBLISHED

# UNITED STATES BANKRUPTCY APPELLATE PANEL

# OF THE TENTH CIRCUIT

| | |
|---|---|
| IN RE RALPH GIFFORD and BETTY GIFFORD, | BAP No.  WY-15-004 |
| Debtors. | |
| GARY A. BARNEY, Trustee, | Bankr. No.  09-21257 Adv. No.  10-02029 |
| Plaintiff – Appellant, | Chapter  7 |
| v. | OPINION |
| BANK OF AMERICA, N.A., successor by merger to BAC Home Loans Servicing, L.P., | |
| Defendant – Appellee. | |

Appeal from the United States Bankruptcy Court
for the District of Wyoming

Submitted on the briefs:[*]

Before CORNISH, KARLIN, and JACOBVITZ, Bankruptcy Judges.

KARLIN, Bankruptcy Judge.

This case involves the bankruptcy trustee's effort to avoid a mortgage on

the debtor's property because of the involvement of Mortgage Electronic

Registration Systems, Inc. in the chain of title.  Because the issues presented in

[*]    The parties did not request oral argument, and after examining the briefs and appellate record, the Court has determined unanimously that oral argument would not materially assist in the determination of this appeal.  *See* Fed. R. Bankr. P. 8019(b)(3).  The case is therefore ordered submitted without oral argument.

this appeal have been squarely resolved in the *Trierweiler*[1] decisions from both this Court and the Tenth Circuit Court of Appeals, we affirm.

## I. Background

Co-debtor Betty Gifford ("Gifford") obtained a loan from Jackson State Bank and Trust ("JSB") in January 2006. She executed a promissory note (the "Note") in the amount of $438,400 and as security for repayment, signed a mortgage (the "Mortgage") on real property in Sublette County, Wyoming. The Mortgage listed JSB as the mortgagee, noted that the "Loan Servicer" could change, and provided that both the Note and Mortgage could be sold without prior notice to Gifford.[2] The Mortgage was properly recorded in the county land records on February 1, 2006.[3]

In compliance with the Mortgage terms, Gifford was provided with (and signed) a Notice of Assignment, Sale or Transfer of Servicing Rights (the "Notice") contemporaneously with her execution of the Note and Mortgage. The Notice indicated that Countrywide Home Loans, Inc. ("Countrywide") would begin servicing the Mortgage, effective March 2006, and that all payments should be made to Countrywide beginning April 2006.[4] On the day Gifford executed the Mortgage, JSB executed a Corporation Assignment of Real Estate Mortgage (the "Assignment"), transferring it to Mortgage Electronic Registration Systems, Inc. ("MERS").[5]

---

[1]     *Royal v. First Interstate Bank (In re Trierweiler)*, 484 B.R. 783 (10th Cir. BAP 2012) ("*Trierweiler 1*"), *affirmed*, 570 Fed. App'x 766 (10th Cir. 2014) ("*Trierweiler 2*").

[2]     Appendix to Appellant's Brief ("Appx") at 84-85, 94.

[3]     *Id.* at 84.

[4]     *Id.* at 104-05.

[5]     *Id.* at 106. The Tenth Circuit's *Trierweiler 2* decision fully explains MERS' role in the mortgage industry when it stated that "MERS is a private

(continued...)

While the Assignment did not expressly identify MERS as an agent or nominee of JSB, there is no dispute that JSB was a MERS member and the transfer was made pursuant to MERS membership rules.[6] During the period that MERS was the mortgagee on the Mortgage, it was the agent for and acted on behalf of the Note owner, which retained the beneficial interest in the Mortgage.[7] The Assignment was recorded with the county land records on February 13, 2006. At that time, JSB remained the holder of the Note and the beneficial owner and servicer of the Mortgage, while MERS was the nominal mortgagee.

Two days later, on February 15, JSB transferred the Note to Countrywide, which was slated to take over the Mortgage servicing duties effective March 1. JSB's Senior VP endorsed the Note as follows: "Pay to the order of Countrywide Bank, N.A. without recourse."[8] Countrywide, which was also a member of

---

[5]     (...continued)
electronic database that tracks the transfer of the beneficial interest in home loans. Many of the companies that participate in the mortgage industry---by originating loans, buying or investing in the beneficial interest in loans, or servicing loans---are members of MERS and pay a fee to use the tracking system. At the origination of the loan, MERS becomes the mortgagee of record for participating members through assignment of the members' interests to MERS. MERS is listed as the grantee in the official records maintained at county register of deeds offices. The lenders retain the promissory notes, as well as the servicing rights to the mortgages. If the lender sells or assigns the beneficial interest in the loan to another MERS member, the change is recorded only in the MERS database, not in county records, because MERS continues to hold the deed of trust, or the mortgage on the new lender's behalf. If the lender transfers its interest in the loan to an entity that is not a member of MERS, then the assignment is once again recorded in the county land records, and the loan is no longer tracked in the MERS system. *Trierweiler 2*, 570 F. App'x at 786 n.1 (internal citations, brackets, and quotes omitted).

[6]     *See* Declaration of Dan McLaughlin, VP of MERS, and Executive VP of its parent company, MERSCORP, Inc., explaining MERS' business and its membership rules, *in* Appx. at 111-13.

[7]     *Id*. at p.3, ¶7 *in* Appx. at 113.

[8]     *Id.* at 82.  Countrywide Bank, N.A. is not the same entity as Countrywide Home Loans, Inc., which had previously been disclosed as the upcoming Mortgage servicer.  However, the parties did not discuss this discrepancy, and it seems likely that the two entities are simply two parts of the same whole – one

(continued...)

MERS, took possession of the Note, while MERS remained the Mortgage's nominal mortgagee (but now acting as agent of Countrywide). Pursuant to MERS rules, no formal documentation was necessary to effectuate the transfer of beneficial ownership of the Mortgage from JSB to Countrywide. In any event, under Wyoming law, a "mortgage follows the note," and Countrywide automatically became the beneficial owner of the Mortgage when it obtained the Note from JSB.[9]

Approximately three years later, Gifford defaulted on the Note, failing to make any payment after the March 2009 payment. Shortly thereafter, Countrywide merged with Bank of America, N.A. ("BANA"), and Countrywide's mortgage servicing arm became BAC Home Loans Servicing, LP ("BAC"). There is also no dispute that BANA has physically possessed the Note, through its custodian, at all relevant times since the merger.[10]

Six months after this merger, MERS assigned the Mortgage to BAC. That assignment was also recorded in the county land records on October 27, 2009 and, as with the JSB Assignment, contained no designation of legal and/or equitable ownership of the Mortgage.[11] MERS assigned "all the rights, title and interest in

---

[8]    (...continued)
being a mortgage servicer and the other a mortgage lender. Both entities will be referred to herein as "Countrywide," unless stated otherwise.

[9]    *See, e.g., Bradburn v. Wyoming Trust Co.*, 63 P.2d 792, 797 (Wyo. 1936) ("assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity") (*quoting Carpenter v. Longan*, 83 U.S. 271, 274 (1872)).

[10]    The Trustee has not disputed that the originally executed "wet-ink" Note is contained in a collateral file held by counsel for appellee BANA, and that BANA is the holder of the Note.

[11]    The Trustee contends that it is this transaction, which occurred within 90 days of the Gifford petition date, that he can avoid under 11 U.S.C. § 547(b) as a preference. Unless otherwise noted, all further statutory references in this opinion will be to the Bankruptcy Code, which is Title 11 of the United States Code.

-4-

and to" the Mortgage and "its rights, title and interest in the [Note]" to BAC.[12]

Approximately six weeks later, Gifford filed a Chapter 7 bankruptcy petition.

Nineteen months after the petition date, BAC also merged with BANA.

The following is a chronological list of these events:

| | |
|---|---|
| 01/26/06 | Gifford signs Note, Mortgage, and Notice of Assignment of Servicing |
| 01/26/06 | JSB executes assignment of Mortgage to MERS |
| 02/01/06 | Mortgage is recorded with county clerk |
| 02/13/06 | Assignment of Mortgage to MERS is recorded with county clerk |
| 02/15/06 | JSB sells and transfers Note to Countrywide |
| 04/01/09 | Gifford defaults on the note and never cures |
| 04/27/09 | Countrywide merges with BANA and Countrywide Home Loan Servicing becomes BAC Home Loan Servicing, LP |
| 10/21/09 | MERS' assignment of Mortgage to BAC is recorded |
| **12/11/09** | **Gifford files Ch. 7 petition** |
| 07/2011 | BAC merges with BANA |

## II.    Appellate Jurisdiction

The bankruptcy court's opinion and judgment on the parties' cross-motions for summary judgment were entered on January 8, 2015. A summary judgment order that fully disposes of an adversary proceeding is a final order for purposes of appeal.[13] The Trustee's notice of appeal was timely filed on January 20, 2015, and neither party to the appeal elected to have the federal district court for the

---

[12]    Appx. at 107.

[13]    This Court has jurisdiction to hear timely filed appeals from "final judgments, orders, and decrees" of bankruptcy courts within the Tenth Circuit, unless one of the parties elects to have the district court hear the appeal. 28 U.S.C. § 158(a)(1), (b)(1), and (c)(1); Fed. R. Bankr. P. 8005; 10th Cir. BAP L.R. 8005-1.

district of Wyoming rule on the appeal.[14] Therefore, this Court has valid appellate jurisdiction.

### III. Issue and Standard of Review

**Are the Trustee's avoidance claims valid under *Trierweiler*?**

This is a legal issue arising out of a ruling on summary judgment, which is reviewed *de novo*.[15] *De novo* review requires an independent determination of the issues, giving no special weight to the bankruptcy court's decision.[16]

### IV. Bankruptcy Proceedings

When the Giffords filed bankruptcy, BAC was the mortgagee of the Mortgage and soon filed a motion seeking relief from stay so it could foreclose the Mortgage. Appellant Gary A. Barney, the trustee assigned to the Gifford bankruptcy case ("Trustee"), objected. After BAC withdrew its motion, the Trustee filed an adversary complaint against BANA, as "successor by merger" to BAC.[17] The Trustee's complaint consisted of two counts: he alleged 1) the transfer of the Mortgage by MERS to BAC was an avoidable preference under § 547, and 2) his powers under § 544(a) allowed him to avoid the Mortgage as "unenforceable."[18]

---

[14] Fed. R. Bankr. P. 8002(a)(1) (notice of appeal must be filed within 14 days of entry of the judgment); 28 U.S.C. § 158(c)(1) (appeals "shall be heard by" the BAP in the absence of an election).

[15] *Gen. Elec. Capital Corp. v. Manager of Revenue (In re W. Pac. Airlines, Inc.)*, 273 F.3d 1288, 1291 (10th Cir. 2001).

[16] *Salve Regina Coll. v. Russell*, 499 U.S. 225, 238 (1991).

[17] In fact, at this time, BAC had not yet merged with BANA, as that merger happened in July 2011. However, Countrywide had merged with BANA in April 2009, at which time, its mortgage servicing arm became BAC. Approximately 6 months later, MERS assigned the Mortgage to BAC, which had been servicing the Mortgage (initially, as Countrywide Home Loan Servicing) since its transfer by JSB to Countrywide in February 2006.

[18] The Trustee alleged that the JSB assignment of the Mortgage to MERS rendered it unenforceable because that transfer "split" the Note and the Mortgage.

(continued...)

Both parties filed opposing motions for summary judgment, relying on a Statement of Undisputed Stipulated Facts.[19] After a hearing, the bankruptcy court certified the following question to the Wyoming Supreme Court: "Whether the [M]ortgage must comply with the statutory requirements of Wyo. Stat. §§ 34-2-122 and 34-2-123."[20] In December 2012, before the Wyoming Supreme Court had rendered its decision, this Court issued *Trierweiler 1*.[21] The *Trierweiler* trustee appealed *Trierweiler 1* to the Tenth Circuit shortly thereafter.

In May 2013, the Wyoming Supreme Court responded to the bankruptcy court's certified question, stating:

> The bankruptcy trustee argues that because the recorded assignments of the Mortgage, first to MERS and then to BAC, did not identify with specificity the terms of the agency relationship between the holder of the Note and the holder of the Mortgage, the recorded assignment did not comply with §§ 34–2–122 and 123. The trustee further argues that the failure to comply with these statutory terms renders the Mortgage unenforceable. We disagree that Sections 122 and 123 operate in the manner urged by the bankruptcy trustee and instead conclude as BAC urges that the purpose and effect of these provisions is to bar an undisclosed or improperly disclosed principal from questioning an agent's authority to transfer a property interest to a third party. Given the plain language of the provisions and their narrow and specific purpose, we conclude that the provisions are not implicated in this case, and the Mortgage was not required to comply with Sections 122 and 123.[22]

---

[18]    (...continued)
He also alleged unenforceability based on Wyoming Statutes § 34-2-122 and § 34-2-123.

[19]    Appx. at 75-78.

[20]    Certification Order from the United States Bankruptcy Court for the District of Wyoming to the Supreme Court of the State of Wyoming, p.2 *in* Appx. at 189. These statutes, which were also discussed in both *Trierweiler* decisions, provide that conveyances of real property to a grantee *that is described as a trustee* must define the trust under which the grantee operates. In this case, neither MERS, Countrywide, nor BAC was ever described as anything other than "mortgagee."

[21]    *Royal v. First Interstate Bank (In re Trierweiler)*, 484 B.R. 783 (10th Cir. BAP 2012).

[22]    *Barney v. BAC Home Loans Servicing, L.P. (In re Gifford)*, 300 P.3d 852,

(continued...)

A year later, in July 2014, the Tenth Circuit issued its *Trierweiler 2* decision, affirming the decisions of the bankruptcy court and the BAP.[23]

Due to the strong factual similarities between the *Trierweiler* and *Gifford* cases, the bankruptcy court requested the *Gifford* parties address the impact of the Tenth Circuit's *Trierweiler* decision on their case. After that supplemental briefing, the bankruptcy court granted BANA's summary judgment motion and denied the Trustee's.

## V. Discussion

### A. § 544(a) Strong-arm Power

This appeal presents facts that are nearly identical to those in *Trierweiler*. The attorney for the Trustee is the same in both cases (although the Trustee/Appellant is not), and he makes essentially the same arguments here that have already been rejected in *Trierweiler*. The Trustee attempts to distinguish *Trierweiler* by arguing that in that case, MERS was specifically designated as the "nominee" of the loan's owner, whereas here, MERS was simply designated the "mortgagee." He argues that this fact renders the Mortgage unenforceable under the Wyoming statutes that require a trust or agency relationship to be disclosed in the conveyance instrument.[24] However, the Wyoming Supreme Court has already rejected this argument, holding that failure to comply with the cited Wyoming

---

[22]      (...continued)
855-57 (Wyo. 2013) (determining the statutes upon which the Trustee relied inapplicable to the present facts because they: 1) "apply only to instruments in which the grantee is described as a trustee, agent, or as serving in any other representative capacity"; and 2) "operate to protect third parties from conflicting claims of principals and agents").

[23]      *Royal v. First Interstate Bank (In re Trierweiler)*, 570 Fed. App'x 766 (10th Cir. 2014).

[24]      *See* Wyo. Stat. §§ 34-2-122 and 34-2-123.

statutes does not render a mortgage unenforceable.[25]  The statutes "operate to protect third parties from conflicting claims of principals and agents (or the conflicting claims of beneficiaries/trustees, or of the parties to any other representative relationship);" not to protect the mortgagor.[26] Accordingly, this purported distinction does not lead us to a different result.

The original recording in the county land records perfected the Mortgage, and the record of that Mortgage provides constructive notice of the existence of a prior lien on the property to all subsequent creditors and purchasers.[27]  A mortgage even the Trustee stipulates was properly perfected at its inception cannot be avoided on the basis that the identities of all its assignees are not of record.[28]  Since a properly recorded mortgage provides notice to everyone that the described property is subject to a lien, it is not necessary to its enforcement that all subsequent transfers of it or the underlying note be of record.  Neither prospective property buyers nor potential creditors of the property owner need to know the precise identity of either a mortgage's equitable owner or note holder in order to decide whether or not to consummate a transaction with the property owner.  Statutes that do require mortgage assignments be recorded are not intended to protect such parties.  Instead, those statutes "are intended to govern priorities between lenders, not the validity of liens."[29]  Consequently, such statutes do not invalidate mortgages, as the Trustee asserts.  Rather, they simply determine the rights of those claiming an interest in the mortgage.

---

[25]  *In re Gifford*, 330 P.3d at 855.

[26]  *Id*. at 857.

[27]  *Dep't of Revenue & Taxation v. First Wyoming Bank, N.A.*, 718 P.2d 31, 34 (Wyo. 1986) (mortgagee perfects its interest in land by recording the mortgage). *See also* Wyo. Stat. § 34-2-109 (2009).

[28]  *Trierweiler 1*, 484 B.R. at 795; *Trierweiler 2*, 570 Fed. App'x at 771-73.

[29]  *Trierweiler 1*, 484 B.R. at 795.

-9-

The Trustee also argues, as his counsel also unsuccessfully argued in both *Trierweiler* appeals, that assignment of a mortgage to a party that is not also the holder of the underlying promissory note results in a "split" of the note from the mortgage that renders the mortgage unenforceable and the note unsecured. Pursuant to that premise, he argues the Mortgage is subject to avoidance using his § 544(a) "strong-arm" powers. However, this split note theory was specifically and emphatically rejected by the Tenth Circuit in *Trierweiler*,[30] which is not only binding precedent in this Circuit, but is undistinguishable since it is based on the same Wyoming law that is applicable here.

In Wyoming, a mortgage is "perfected" by recording it with the appropriate county clerk[31] and, again, this Trustee never disputes that the Mortgage was properly recorded in 2006. Perfected mortgages provide constructive notice of the existence of a lien, and such notice prevents any subsequent purchaser from qualifying as a "bona fide purchaser." Consequently, constructive notice precludes a bankruptcy trustee's avoidance of a perfected lien using § 544(a)'s strong arm powers.[32]

---

[30] *Trierweiler 2*, 570 Fed. App'x at 773 (noting it is a "fundamental rule that the security follows the note"); *Trierweiler 1,* 484 B.R. at 792 (same). The split-note theory has been rejected in many other jurisdictions, as well. *See, e.g.*, *Harris Cty. v. MERSCORP Inc.*, No. 14-10392, 2015 WL 3937927, at *13 (5th Cir. June 26, 2015) (rejecting split note theory under Texas law); *Scheider v. Deutsche Bank Nat'l Trust Co.*, 572 F. App'x 185, 190 (4th Cir. 2014) (same, South Carolina law); *Robinson v. Am. Home Mortg. Servicing, Inc. (In re Mortg. Elec. Registration Sys., Inc.)*, 754 F.3d 772, 786 (9th Cir. 2014) (same, Nevada law); *Macon Cty. v. MERSCORP, Inc.*, 742 F.3d 711, 712 (7th Cir. 2014) (same, Illinois law); *Culhane v. Aurora Loan Servs.*, 708 F.3d 282, 292 (1st Cir. 2013) (same, Massachusetts law); *PHH Mortg. Corp. v. Garner*, No. A-2920-11T1, 2013 WL 2459868, at *6 (N.J. Super. Ct. App. Div. June 10, 2013) (same, New Jersey law)*; Commonwealth Prop. Advocates, LLC v. Mortgage Elec. Registration Sys., Inc.*, 263 P.3d 397, 402–04 (Utah Ct. App. 2011) (same, Utah law).

[31] *Dep't of Revenue & Taxation v. First Wyoming Bank, N.A.*, 718 P.2d at 34 (mortgagee perfects its interest in land by recording the mortgage). *See also* Wyo. Stat. § 34-2-109 (2009).

[32] *Trierweiler 2*, 570 Fed. Appx. at 773; *Hamilton v. Wash. Mut. Bank FA (In*

(continued...)

The recorded Mortgage gave notice to everyone, including prospective purchasers and creditors, that Gifford's property was subject to a lien. Because this Trustee thus had constructive notice of the Mortgage, he cannot qualify as a hypothetical bona fide purchaser and thus he cannot avoid the Mortgage under § 544(a)(3).[33]

### B. § 547(b) Preference

The Trustee also argues that he can avoid MERS' assignment of the Mortgage to BAC as a preferential transfer under § 547(b). That provision allows a bankruptcy trustee to avoid a "transfer of an interest *of the debtor* in property" that meets other requirements, in particular, debtor's insolvency when the transfer occurred and the timing of the transfer with respect to the petition date. But this Court's analysis of such transfers in *Trierweiler* is equally applicable here. In considering essentially the same language as it appears in § 544(a)—"may avoid any transfer of property of the debtor...," this Court specifically held that transfers of mortgages are not transfers of an interest of the *debtor* in property[34] because debtors have no property interest in their own perfected mortgages.[35] As a result, we affirm this part of the bankruptcy decision, as well.

---

[32] (...continued)
*re Colon)*, 563 F.3d 1171, 1186 (10th Cir. 2009); *Loyd v. Ball (In re Dailey)*, 463 B.R 142, Adv. No. 08-01010, 2009 WL 2431254, at *2-*4 (10th Cir. BAP Aug. 10, 2009).

[33] *Id.*

[34] The transfer of a mortgage by the mortgagee is distinguishable from the debtor's voluntary or involuntary transfer of an interest in the real property itself, such as by the initial grant of a mortgage on the property or the perfection of the lien of the mortgage.

[35] *Trierweiler 1,* 484 B.R. at 797 (noting that the trustee's argument ignored the fact that when the note was transferred—there to Fannie Mae—it was an asset of the *creditor* that was being transferred, *i.e.*, merely an assignment from one creditor to another, not a transfer of the debtor's property). Sections 544(a) and 547(b) both expressly require a transfer of the debtor's property. Although a mortgage may give certain rights to a debtor, they are not property rights that can preclude transfer of that mortgage.

## VI.    CONCLUSION

The issues presented by the Trustee in this case were resolved by the Tenth Circuit Court of Appeals in its *Trierweiler 2* decision. Under Wyoming law, a note holder's use of MERS as the mortgagee on a mortgage does not render the mortgage ineffective or the note unsecured, whether or not MERS is expressly named as a "nominee" (or "agent") of the note holder on the face of the mortgage. In addition, a trustee may not use the strong-arm powers under § 544(a) to avoid a properly perfected mortgage.  Finally, a debtor who grants a mortgage on her property does not retain an "interest in property" in that mortgage that a trustee can avoid under § 547(b); the mortgage may be freely transferred without becoming avoidable.  We therefore affirm the bankruptcy court's summary judgment in BANA's favor.