**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 2, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

_____

IN RE: MATTHEW JAMES
TRIERWEILER; SHANNON RENEE
TRIERWEILER,

     Debtors.

_____

RANDY L. ROYAL, Trustee,

     Plaintiff–Appellant,

v.

FIRST INTERSTATE BANK, a
corporation, its assigns and successors;
MORTGAGE ELECTRONIC
REGISTRATION SYSTEM, INC.,

     Defendants–Appellees.

No. 13-8003
(B.A.P. No. WY-11-111)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **LUCERO**, **HOLLOWAY**,[**] and **GORSUCH**, Circuit Judges.

_____

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 32.1.

[**] The late Honorable William J. Holloway, Jr., United States Senior Circuit Judge, participated as a panel member when this case was heard, but passed away before

Continued . . .

This appeal arises from an adversary proceeding in a Chapter 7 bankruptcy case. Randy Royal, the bankruptcy trustee (the "Trustee"), attempted to avoid a mortgage lien on the real property of the debtors, Matthew and Shannon Trierweiler (the "Debtors"), using his "strong arm" powers under 11 U.S.C. § 544(a). The Trustee argued that the mortgage became unsecured—and thus avoidable in bankruptcy—due to the involvement of Mortgage Electronic Registration Systems, Inc. ("MERS") in the loan transaction that gave rise to the contested mortgage. The bankruptcy court ruled that the mortgage was a properly recorded and enforceable security interest that could not be avoided in bankruptcy. The Tenth Circuit Bankruptcy Appellate Panel ("BAP") upheld the bankruptcy court's determination. Exercising jurisdiction under 28 U.S.C. § 158(d)(1), we affirm.

**I**

There is essentially no dispute concerning the facts underlying this appeal. On March 16, 2009, the Debtors took out a $417,000 loan from First Interstate Bank ("First Interstate") for the purchase of a home in Dayton, Wyoming. In return for the loan, the Debtors executed a promissory note in favor of First Interstate, which was designated as

final disposition. "The practice of this court permits the remaining two panel judges if in agreement to act as a quorum in resolving the appeal." United States v. Wiles, 106 F.3d 1516, 1516 n.* (10th Cir. 1997); see also 28 U.S.C. § 46(d) (noting circuit court may adopt procedure permitting disposition of an appeal where remaining quorum of panel agrees on the disposition). The remaining panel members have acted as a quorum with respect to this Order and Judgment.

the "Lender." By its express terms, the note could be transferred by First Interstate to other entities. On the same day, the Debtors also granted a mortgage to First Interstate, using their real property as collateral to secure repayment of the note. In the mortgage, the Debtors were identified as the "Borrower," First Interstate as the "Lender," and MERS as both the "mortgagee" and the "nominee for Lender and Lender's successors and assigns." The mortgage agreement specified that "[t]he Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower." On March 20, 2009, the mortgage was recorded in the Sheridan County, Wyoming land records.

MERS is a private electronic system used by lenders to record transfers of notes and mortgages.[1] The Debtors' mortgage spelled out in considerable detail the role that

---

[1] Described more specifically, "MERS is a private electronic database that tracks the transfer of the beneficial interest in home loans." Commonwealth Prop. Advocates, LLC v. Mortg. Elec. Registration Sys., Inc., 680 F.3d 1194, 1197 n.1 (10th Cir. 2011). "Many of the companies that participate in the mortgage industry—by originating loans, buying or investing in the beneficial interest in loans, or servicing loans—are members of MERS and pay a fee to use the tracking system." Cervantes v. Countrywide Home Loans, Inc., 656 F.3d 1034, 1039 (9th Cir. 2011). At the origination of the loan, "MERS becomes the mortgagee of record for participating members through assignment of the members' interests to MERS. MERS is listed as the grantee in the official records maintained at county register of deeds offices. The lenders retain the promissory notes, as well as the servicing rights to the mortgages." Mortg. Elec. Registration Sys., Inc. v. Neb. Dep't of Banking & Fin., 704 N.W.2d 784, 785 (Neb. 2005). "If the lender sells or assigns the beneficial interest in the loan to another MERS member, the change is recorded only in the MERS database, not in county records, because MERS continues to hold the deed [of trust, or the mortgage] on the new lender's behalf." Cervantes, 656 F.3d at 1039. If the lender transfers its interest in the loan to an entity that is not a

Continued . . .

-3-

MERS was to play in facilitating the loan transaction and later transfers of the note to other parties. The mortgage agreement provided that

> MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument.
> . . .
> This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power, the [Debtors' real property] . . . .
> . . .
> . . . Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

The agreement did not contain any provision prohibiting the assignment of the mortgage to other entities.

After the Debtors executed the note and mortgage (but before they filed their petition for bankruptcy), First Interstate sold the note to the Federal National Mortgage Association ("Fannie Mae"), endorsing the note in blank and delivering the original to Fannie Mae. By agreement with Fannie Mae, First Interstate continued to service the

member of MERS, then the assignment is once again recorded in the county land records, "and the loan is no longer tracked in the MERS system." Id.

loan for the Debtors. Thus, First Interstate remained responsible for corresponding with the Debtors and collecting payments on the loan. Fannie Mae, however, possessed the note through a document custodian. Throughout this time, MERS remained the mortgagee of record, as reflected in the Sheridan County land records.

In September 2009, the Debtors defaulted on the loan. On May 3, 2010, they filed for bankruptcy protection under Chapter 7 of the United States Bankruptcy Code. Shortly thereafter, First Interstate filed a motion for relief from the automatic stay in bankruptcy under 11 U.S.C. § 362(d) in order to foreclose on the Debtors' property. First Interstate's motion was denied due to lack of standing, and the bankruptcy court found that First Interstate, as servicer of the loan, had failed to present sufficient evidence of authority to act on behalf of Fannie Mae, the owner and holder of the note, to foreclose on the property.[2]

---

[2] On December 13, 2010, First Interstate filed a second motion for relief from the automatic stay after taking physical possession of the note from Fannie Mae and receiving an assignment of the mortgage from MERS. The Debtors at first opposed the motion but withdrew their opposition on March 20, 2012, several months after the bankruptcy court issued its decision dismissing the Trustee's adversary complaint to avoid the mortgage. The next day, the bankruptcy court granted First Interstate's motion for relief from the automatic stay. The Debtors' property in Dayton, Wyoming was later sold to First Interstate at a foreclosure sale. Because First Interstate had received the deed to the property, thereby merging the Debtors' mortgage into First Interstate's title, the BAP initially questioned whether the Trustee's appeal had been mooted. The BAP eventually determined that the appeal was not moot, reasoning that if the Trustee prevailed on appeal, then he could still recover the proceeds of the mortgage lien from First Interstate—a conclusion with which we agree. See Golfland Entm't Ctrs., Inc. v. Peak Inv., Inc. (In re BCD Corp.), 119 F.3d 852, 856 (10th Cir. 1997) (endorsing the proposition that "an appeal would not be dismissed as moot where there was a possibility

Continued . . .

In December 2010, the Trustee filed an adversary complaint against First Interstate and MERS. The Trustee sought to avoid the mortgage lien on the Debtors' real property for the benefit of the bankruptcy estate, using powers afforded by 11 U.S.C. § 544(a). In the Trustee's view, MERS was the mortgagee of record but was powerless to foreclose on the property because it was not also the holder of the note; similarly, Fannie Mae held the note but had no ability to enforce the mortgage because it was not listed as the mortgagee in the land records, and the combination rendered the mortgage unenforceable and void as to the Trustee.

Following a trial, the bankruptcy court dismissed the Trustee's complaint on November 21, 2011. In rejecting the Trustee's arguments, the bankruptcy court held that it was not impermissible for MERS to act as mortgagee in a representative capacity on behalf of the holder of the note; that its doing so did not cause any split of the note and mortgage; that the mortgage was properly recorded as a matter of Wyoming law before the Debtors filed for bankruptcy; that the recorded mortgage gave notice to the Trustee of a valid lien on the Debtors' real property; and that the Trustee ultimately could not avoid the mortgage. The Trustee appealed the decision to the BAP, which affirmed the bankruptcy court's judgment on December 28, 2012. This timely appeal by the Trustee followed.

---

of recovery, to which the appellant might be entitled, from proceeds of a sale of property in a bankruptcy case").

## II

"Although this appeal is from a decision by the BAP, we review only the Bankruptcy Court's decision." Alderete v. Educ. Credit Mgmt. Corp. (In re Alderete), 412 F.3d 1200, 1204 (10th Cir. 2005). "We review matters of law de novo, and we review factual findings made by the bankruptcy court for clear error." C.O.P. Coal Dev. Co. v. C.W. Mining Co. (In re C.W. Mining Co.), 641 F.3d 1235, 1240 (10th Cir. 2011). "[W]e treat the BAP as a subordinate appellate tribunal whose rulings are not entitled to any deference (although they certainly may be persuasive)." Parks v. Dittmar (In re Dittmar), 618 F.3d 1199, 1204 (10th Cir. 2010) (quotation omitted). We may affirm the decision of the bankruptcy court "for any reason supported by the record." United States v. Myers (In re Myers), 362 F.3d 667, 674 n.7 (10th Cir. 2004).

## A

Resolution of this appeal turns on whether, at the time the Debtors filed their bankruptcy petition, the Trustee was put on notice that the Debtors' real property was encumbered by a properly perfected and enforceable mortgage. The Trustee does not dispute that the Debtors executed a promissory note in favor of First Interstate that was secured by a mortgage. The Trustee also agrees that the mortgage was recorded in the county land records following the procedure dictated by state law. But he argues that the simple act of recording the mortgage granted by the Debtors in 2009 was not sufficient to give him notice of a valid mortgage lien on the Debtors' property on the date they filed for bankruptcy. He claims there was no valid mortgage at that time that could be

-7-

enforced against a bankruptcy trustee using the avoidance powers granted by § 544(a).

Thus the Trustee asserts he can take the Debtors' property free and clear of the mortgage

for the benefit of the bankruptcy estate.

"A bankruptcy trustee . . . acts in the interests of the debtor's general creditors."

Hamilton v. Wash. Mut. Bank FA (In re Colon), 563 F.3d 1171, 1172 (10th Cir. 2009).

In this capacity, he "may acquire for the bankruptcy estate a greater right to a debtor's

real property than the debtor himself had." Id. at 1173. Under the terms of § 544(a), "a

bankruptcy trustee can avoid a mortgage if it could be avoided by a hypothetical lien

creditor or by a hypothetical [bona fide purchaser] of the property."[3] In re Colon, 563

F.3d at 1173-74. "The trustee's power to avoid transfers under this provision of the

---

[3] The pertinent text of the statute provides:

> The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—
> (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;
> . . . or
> (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. § 544(a).

bankruptcy code is known as the 'strong arm' power." Id. at 1174.  We look to state law to determine "[t]he status and rights" of the hypothetical bona fide purchaser or judicial lien creditor.  Id.

Under Wyoming law, "a mortgage properly recorded in the county clerk's office provides notice to subsequent purchasers and takes precedence over later conveyances." Countrywide Home Loans, Inc. v. First Nat'l Bank of Steamboat Springs, N.A., 144 P.3d 1224, 1229 (Wyo. 2006) (discussing Wyo. Stat. § 34-1-121).  "[A] subsequent purchaser (or mortgagee) has constructive notice of any burden upon title from the date of recordation."  Id.; see also Wyo. Dep't of Revenue & Taxation–Excise Tax Div. v. First Wyo. Bank, N.A.–Kemmerer, 718 P.2d 31, 35 (Wyo. 1986) (observing that "the purpose of our recording statutes" is to "entitle one to rely on public records and determine whether or not a certain property is subject to liens, prior encumbrances or other outstanding claims").  "Constructive or record notice is notice of all properly recorded claims and is inferred as a matter of law."  Wyo. Bank & Trust v. Haught, 76 P.3d 301, 306 (Wyo. 2003).  In the present matter, the bankruptcy court held that the Trustee had constructive notice of the mortgage's existence because it was properly recorded in the Sheridan County land records.

We agree.  Because the recording of the Debtors' mortgage satisfied all the formalities required by Wyoming law, the Trustee had constructive notice of the existence of a mortgage lien on the Debtors' property as a matter of law when the

-9-

Debtors filed for bankruptcy. The Trustee cannot take a property free and clear of a mortgage of which he had constructive notice.

In addition, however, the Trustee attacks the underlying enforceability of the mortgage itself. He argues that the recorded mortgage, despite complying with the formalities of recordation, could not actually give him good notice of who was truly entitled to foreclose on the mortgage at the time of the Debtors' bankruptcy filing because the land records on the filing date would have revealed that MERS was the mortgagee of record, yet Fannie Mae held the note. This state of affairs, the Trustee contends, resulted in an irreparable split of the note and mortgage, making the mortgage unenforceable as to him.

It is a black-letter rule, the Trustee argues, that a mortgage exists solely as an "incident" to the obligation it secures. See, e.g., Bradburn v. Wyo. Trust Co. of Casper, 63 P.2d 792, 797 (Wyo. 1936) ("It is familiar law that a mortgage being only an incident to the debt it secures, a transfer of the latter will carry with it the mortgage security and operate as an equitable assignment thereof unless it is agreed otherwise."). Whether the mortgage was separated from the note when First Interstate transferred the note to Fannie Mae without recording the assignment of the mortgage in the county land records or was void from the outset because First Interstate held the note while listing MERS, rather than itself, as mortgagee in the land records, the Trustee contends that the role MERS played as a nominal mortgagee on behalf of First Interstate and, later, Fannie Mae operated to sever the note from the mortgage, rendering the mortgage avoidable in bankruptcy.

-10-

In two recent opinions, we have rejected variations on the Trustee's argument. See Commonwealth, 680 F.3d 1194 and Burnett v. Mortg. Elec. Registration Sys., Inc., 706 F.3d 1231 (10th Cir. 2013). Although those cases involved application of Utah law, the basis for our decision applies with equal force here. In both cases, a borrower had executed a security instrument naming MERS as holder of legal title to the security in a representative capacity for the lender and its successors, who retained the beneficial interest in the debt. After defaulting, the borrowers or their successors in interest argued that the securitization and transfer of the note had left no party with the authority to foreclose on the property.

Finding a recent state-court decision to be dispositive of the issue, we explained in Commonwealth that Utah law "merely says the transfer of a debt operates as the transfer of the security. It says nothing about who is or is not authorized to foreclose on a trust deed."[4] 680 F.3d at 1205. In discussing the Utah court's opinion, we noted that Utah law does not "'prohibit[] the original parties to the Note and Deed of Trust from agreeing to have someone other than the beneficial owner of the debt act on behalf of that owner and its successors and assigns to enforce rights granted in the trust deed.'" Id. at 1204 (quoting Commonwealth Prop. Advocates, LLC v. Mortg. Elec. Registration Sys., Inc., 263 P.3d 397, 404 (Utah Ct. App. 2011), cert. denied, 268 P.3d 192 (Utah)). Looking to

---

[4] The difference in Utah between a mortgage and a deed of trust is mainly one of terminology. See Utah Code § 70D-1-102 (defining "Mortgage" as a "mortgage or deed of trust affecting real property located in this state").

-11-

the terms of the security instrument at issue, we said that "[t]he Deed of Trust explicitly gave MERS the right to foreclose on behalf of 'Lender and Lender's successors and assigns.' [Utah law] does not prohibit parties from contracting for these arrangements . . . ." Id. at 1205 (quotation omitted). We went on to add that the decision of the Utah court was "consistent both with [Utah law] and with numerous federal district court cases that have addressed the same arguments." Id. We held similar arguments presented by the plaintiff in Burnett were "foreclosed by our decision in Commonwealth." 706 F.3d at 1237.

Our reasoning in Commonwealth and Burnett extends to this case. Although the litigation in those matters was not initiated by a bankruptcy trustee, the argument used to challenge the efficacy of the security interests at issue is fundamentally the argument employed by the Trustee in this case. The deeds of trust in Commonwealth and Burnett, like the mortgage executed by the Debtors in the case at bar, contained materially identical language reflecting the agreement of all parties to the loan transaction that MERS would act as mortgagee solely in a representative capacity for the lender and any of its "successors and assigns." The Trustee has offered no convincing explanation as to why Wyoming law would treat promissory notes and security instruments any differently than Utah law, as recently interpreted in Commonwealth and Burnett. The fundamental rule that the security follows the note is in no way altered by the fact that deeds of trust are used in home-loan transactions in Utah, while Wyoming uses mortgages. See Utah Code § 57-1-35 ("The transfer of any debt secured by a trust deed shall operate as a

-12-

transfer of the security therefor."); Bradburn, 63 P.2d at 797 ("It is familiar law [in Wyoming] that a mortgage being only an incident to the debt it secures, a transfer of the latter will carry with it the mortgage security . . . .").

As of the date the Debtors filed their bankruptcy petition, the Trustee had constructive notice of a properly recorded <u>and</u> enforceable mortgage lien on the Debtors' real property. Notwithstanding his "strong arm" powers under § 544(a), the Trustee cannot avoid the mortgage.[5]

## B

In addition, the Trustee asserts the bankruptcy court erred in failing to apply the law-of-the-case doctrine to his adversary claim. Had the court done so, the Trustee claims, it would have held the mortgage to be unenforceable. The Trustee argues that because the bankruptcy court initially held that First Interstate could not obtain relief from the automatic stay because it had not shown that it possessed authority to foreclose

---

[5] For the first time on appeal, the Trustee argued before the BAP that the mortgage was also unenforceable because it did not comply with the unique notice requirements of two Wyoming statutes, Wyo. Stat. §§ 34-2-122 and -123, which primarily deal with conveyances to trusts. The BAP rejected that argument. While this appeal was pending, the Wyoming Supreme Court answered a certified question from the United States Bankruptcy Court for the District of Wyoming in a separate case asking whether Wyoming mortgages containing terms like those found in the mortgage at issue must satisfy the specific requirements set forth in those two statutes. <u>See</u> <u>Barney v. BAC Home Loans Servicing, L.P. (In re Gifford)</u>, 300 P.3d 852, 853 (Wyo. 2013). The Wyoming Supreme Court held that Wyo. Stat. §§ 34-2-122 and -123 "are notice statutes intended to protect third parties from conflicting claims of a principal and agent," <u>Barney</u>, 300 P.3d at 857, a situation not implicated in the present matter. "[T]he statutes therefore do not apply." <u>Id.</u>

on the Debtors' property, the bankruptcy court should have gone on to hold that, as the law of the case, the mortgage was unenforceable as to the Trustee. The Trustee reasons that the bankruptcy court's denial of First Interstate's motion for relief must be understood as determining that the only party with standing to enforce the mortgage was Fannie Mae. But because Fannie Mae was not listed as the mortgagee in the county land records, the Trustee had no notice of Fannie Mae's interest and therefore should be able to avoid the mortgage.

"As most commonly defined, the [law-of-the-case] doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." Arizona v. California, 460 U.S. 605, 618 (1983). "[T]he rule is not an inexorable command, but is to be applied with good sense." Major v. Benton, 647 F.2d 110, 112 (10th Cir. 1981) (quotation omitted).

The bankruptcy court's initial ruling—that First Interstate sought to foreclose before it could demonstrate it was authorized to do so—had little to do with the court's later determination that the Trustee could not avoid the enforceable mortgage. "Whether a party has standing to seek relief as a party in interest . . . is an issue distinct from whether that party's underlying claim is valid." Miller v. Deutsche Bank Nat'l Trust Co. (In re Miller), 666 F.3d 1255, 1261 n.4 (10th Cir. 2012). There is no inconsistency between the bankruptcy court's separate rulings on two legally distinct issues, and the law-of-the-case doctrine does not apply.

## C

As a final matter, the Trustee argues the BAP erred in denying his motion to disqualify one of the three BAP judges who heard his appeal, the Honorable Dale L. Somers.[6] In seeking to disqualify him, the Trustee believed—and apparently continues to believe—that Judge Somers could not be impartial in hearing this case because, sometime earlier, he had authored the decision in Hamilton v. CitiMortgage, Inc. (In re Lieurance), 458 B.R. 757 (Bankr. D. Kan. 2011). In dismissing the Trustee's adversary complaint to avoid the mortgage lien, the bankruptcy court cited and relied in part on the analysis employed by Judge Somers in Lieurance. Although Judge Somers had no part in the bankruptcy court's deliberations in the case at bar, the Trustee contends that the bankruptcy court's reliance on Lieurance meant Judge Somers could not be objective when it came time to review the bankruptcy court's opinion on appeal to the BAP. As

---

[6] The Trustee did not file a motion asking Judge Somers to recuse himself from hearing the appeal. Instead, he filed a motion to disqualify Judge Somers directly with the BAP. As the BAP noted, the proper mechanism for seeking to disqualify a judge is a petition for writ of mandamus. Generally, the filing of a petition for writ of mandamus presumes that a trial-court judge has previously denied a motion to recuse. See Nichols v. Alley, 71 F.3d 347, 350 (10th Cir. 1995) (per curiam) ("An order denying a motion to recuse is interlocutory and is, therefore, not immediately appealable. It is established in this circuit, however, that mandamus is an appropriate vehicle by which to challenge a district court's denial of a recusal motion."). The denial of a motion to recuse is reviewed for abuse of discretion. Id. But because "mandamus remains an extraordinary remedy," we require that "[a] petitioner seeking mandamus relief must demonstrate a clear abuse of discretion," as well as "a clear and indisputable right to relief." Id. (quotation omitted). We conclude, as did the BAP, that the Trustee's efforts to disqualify Judge Somers fail under any standard.

the Trustee puts it, "the practical effect of Judge Somers['] participation in the B.A.P.'s decision was to have Judge Somers reviewing his own decision in <u>Lieurance</u>."

We are pointed to two statutes that the Trustee claims should have commanded Judge Somers' disqualification from hearing the appeal.  These are 28 U.S.C. §§ 47 and 455(a).  Section 47 states that "[n]o judge shall hear or determine an appeal from the decision of a case or issue tried by him."  Section 455(a) provides that a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."  Even the most stringent reading of these statutes clearly demonstrates that there was no valid reason for the Trustee to call for Judge Somers' disqualification.

As an initial matter, § 47 applies when a trial-court judge is put in the position of hearing an appeal from any part of a case that he decided below.  Judge Somers, however, had nothing to do with hearing any part of this case in the bankruptcy court or with authoring the decision of the bankruptcy court that was appealed to the BAP.  For those simple reasons, § 47 is not implicated in this appeal.

Section 455(a) offers no help to the Trustee either.  The purpose of the statute is "to avoid even the appearance of partiality" by a judge.  <u>Liljeberg v. Health Servs. Acquisition Corp.</u>, 486 U.S. 847, 860 (1988) (quotation omitted).  Our "initial inquiry is whether a reasonable factual basis exists for questioning the judge's impartiality."  <u>Nichols</u>, 71 F.3d at 351.  Adhering to a "purely objective" standard, "[t]he inquiry is limited to outward manifestations and reasonable inferences drawn therefrom."  <u>United States v. Cooley</u>, 1 F.3d 985, 993 (10th Cir. 1993).  "[T]he mere fact that a judge has

-16-

previously expressed an opinion on a point of law" will not, as a general rule, "satisfy the requirements for disqualification under § 455(a)." Id.

Section 455(a) "is not intended to give litigants a veto power over sitting judges, or a vehicle for obtaining a judge of their choice." Cooley, 1 F.3d at 993. It does not require any great flight of imagination to envision the absurd and disastrous consequences that would flow from a rule permitting the disqualification of judges who had pronounced their opinion—any opinion—on a legal issue whenever that issue arose with another litigant in another case. We will not belabor the point. Suffice it to say that "[t]here is as much obligation for a judge not to recuse when there is no occasion for him to do so as there is for him to do so when there is." Hinman v. Rogers, 831 F.2d 937, 939 (10th Cir. 1987) (per curiam). The BAP did not err in denying the Trustee's motion to disqualify Judge Somers.

## III

For the reasons discussed above, the judgment of the bankruptcy court is **AFFIRMED**.

Entered for the Court

Carlos F. Lucero
Circuit Judge