FILED
United States Court of Appeals
Tenth Circuit

June 3, 2016

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT
_____

In re: RALPH GIFFORD; BETTY
GIFFORD,

    Debtors.

------------------------------

GARY A. BARNEY, Trustee,

    Plaintiff - Appellant,

v.

BANK OF AMERICA, N.A., successor by
merger to BAC Homes Loans Servicing,
L.P.,

    Defendant - Appellee.

No. 15-8097
(BAP No. 15-004-WY)
(Bankruptcy Appellate Panel)

_____

ORDER AND JUDGMENT[*]
_____

Before **BRISCOE**, **LUCERO**, and **PHILLIPS**, Circuit Judges.
_____

This is an appeal from a decision of the Tenth Circuit Bankruptcy Appellate

Panel (BAP) that affirmed the bankruptcy court's order for summary judgment in

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

favor of Bank of America, N.A. (BANA), on the bankruptcy trustee's claim, for the benefit of the bankruptcy estate, to avoid a mortgage on real property owned by the debtors. Exercising jurisdiction under 28 U.S.C. § 158(d)(1), we affirm.

## Background

In January 2006, co-debtor Betty Gifford obtained a loan from Jackson State Bank and Trust (JSB) for her purchase of real property in Sublette County, Wyoming. At the closing, she executed a promissory note and signed a mortgage as security for payment of the note. The mortgage named JSB as the mortgagee and noted that the loan servicer could change. It further stated that both the note and mortgage could be sold without prior notice to Ms. Gifford. The mortgage was properly recorded in the county land records on February 1, 2006.

At the closing, Ms. Gifford also signed a document titled "Notice of Assignment, Sale or Transfer of Servicing Rights." Aplt. App. at 104. The notice stated that effective March 1, 2006, Countrywide Home Loans, Inc., (Countrywide Loans) would become the loan servicer, i.e., the entity with the "right to collect payments." *Id*. That same day, JSB executed a "Corporation Assignment of Real Estate Mortgage," *id*. at 106, which transferred the mortgage to Mortgage Electronic Registration Systems, Inc. (MERS). The assignment was recorded in the county land records on February 13, 2006. Two days later, JSB transferred the promissory note to Countrywide Bank, N.A. (Countrywide Bank), without recourse.

In April 2009, Ms. Gifford defaulted on the note. Not long thereafter, Countrywide Bank merged with BANA, and Countrywide Loans, its former servicing

2

arm, became BAC Home Loans Servicing, L.P. (BAC). In October 2009, MERS assigned the mortgage and "its rights, title and interest in the note" to BAC. *Id*. at 107. This assignment was recorded in the county land records in October. BAC was the mortgagee in mid-December when Ms. Gifford and her husband, Ralph Gifford, filed their Chapter 7 bankruptcy petition.

BAC, as the mortgagee, filed a motion seeking relief from automatic stay so it could foreclose on the mortgage. When the trustee objected, BAC withdrew its motion and the trustee filed an adversary complaint against BANA, as the successor to BAC, to avoid the mortgage.[1] The trustee advanced two theories: (1) the transfer of the mortgage from MERS to BAC in October 2009 was an avoidable preference under 11 U.S.C. § 547 and (2) the trustee could avoid the mortgage as unenforceable under the "strong-arm" provision of 11 U.S.C. § 544(a).

The parties filed cross motions for summary judgment and following a hearing, the bankruptcy court certified the following question to the Wyoming Supreme Court: "Whether the mortgage must comply with the statutory requirements of Wyo. Stat. §§ 34-2-122 and 34-2-123." Aplt. App. at 189.

In the meantime, the BAP issued its decision in an unrelated case, *Royal v. First Interstate Bank (In re Trierweiler)*, 484 B.R. 783 (B.A.P. 10th Cir. 2012) (*Trierweiler I*). While *Trierweiler I* was on appeal to this court, the Wyoming Supreme Court issued its response to the question certified by the bankruptcy court in the proceedings underlying this appeal, *Barney v. BAC Home Loans Servicing, L.P.*

---

[1] BAC merged with BANA in July 2011.

*(In re Gifford)*, 300 P.3d 852 (Wyo. 2013). Then, this court's decision on appeal from *Trierweiler I*, relied on the Wyoming court's decision in *In re Gifford* to reject the bankruptcy trustee's arguments in that case to avoid a mortgage lien on the debtor's real property. *Royal v. First Interstate Bank (In re Trierweiler)*, 570 F. App'x 766, 773 n.5 (10th Cir. 2014) (*Trierweiler II*). In view of the strong factual and legal similarities between the trustee's claims in *Trierweiler II* and the claims raised by the trustee in the Gifford bankruptcy, the bankruptcy court ordered the parties to file supplemental briefing in the Gifford adversary proceeding. After considering the briefs, the bankruptcy court granted summary judgment for BANA. The BAP affirmed. *Barney v. Bank of America, N.A. (In re Gifford)*, No. WY-15-004, 2015 WL 4878461 (B.A.P 10th Cir. July 24, 2015) (unpublished). The trustee now appeals.

### *Standard of Review*

Although this is an appeal from the BAP, "we review only the Bankruptcy Court's decision." *Warren v. Mathai (In re Warren)*, 512 F.3d 1241, 1248 (10th Cir. 2008) (internal quotation marks omitted). This does not mean that we ignore the BAP's decision, "[r]ather, we . . . treat the BAP as a subordinate appellate tribunal whose rulings are not entitled to any deference (although they certainly may be persuasive)." *Id*. "We apply the same standards of review that govern appellate review in other cases. Accordingly, this court reviews the bankruptcy court's grant of summary judgment de novo." *Jubber v. Bank of Utah (In re C.W. Mining Co.)*, 749 F.3d 895, 898 (10th Cir. 2014) (citation and internal quotation marks omitted).

4

We are not persuaded by the trustee's attempt to distinguish in any meaningful way the arguments raised by and resolved against the trustee in *Trierweiler I* or *II* from the arguments made by the trustee in this appeal.

### *Avoidance of the Mortgage Under 11 U.S.C. § 544*

The trustee raises two arguments as to his right to avoid the mortgage under his "strong arm" powers under 11 U.S.C. § 544. First, citing *Morris v. Kasparek (In re Kasparek)*, 426 B.R. 332 (B.A.P. 10th Cir. 2010), he argues that the bankruptcy court erred by limiting his "strong arm" powers under § 544(a) to the power to avoid a *transfer* of the debtor's property, when the statute says that he can also avoid "any obligation incurred by the debtor." The BAP resolved this issue against the trustee under similar facts in *Trierweiler I*, where the trustee argued that he could avoid an interest in the debtor's property (an obligation incurred by the debtor) as against a properly recorded mortgage:

> In *Kasparek* a panel of this Court held that the trustee under § 544(a) could avoid an unrecorded equitable interest in the debtor's property. . . . But this principle does not entitle the Trustee to the relief he seeks. As discussed above, the Mortgage is not unenforceable. . . . [Consequently], [t]he construction of § 544 adopted in *Kasparek* has no applicability to the facts of this case [where] [t]he Trustee is seeking to avoid a properly recorded Mortgage, not an unrecorded equitable interest encumbering the Debtor's Property.

484 B.R. at 796.

Next, the trustee argues that the bankruptcy court erred in holding that he could not use the "strong arm" powers of § 544 to avoid a purportedly unenforceable, but nonetheless properly recorded, mortgage lien. We rejected the same argument in

5

*Trierweiler II*. In that case, the trustee argued that the mortgage became unenforceable when the mortgage and note were "split," i.e., the mortgage was assigned to one entity and the note was held by another. Regardless of the enforceability of the mortgage, we held that the trustee could not use his "strong arm" powers under § 544(a) to avoid the lien, which had been properly perfected under state law:

> In the present matter, the bankruptcy court held that the Trustee had constructive notice of the mortgage's existence because it was properly recorded in the Sheridan County land records. . . . We agree. Because the recording of the Debtors' mortgage satisfied all the formalities required by Wyoming law, the Trustee had constructive notice of the existence of a mortgage lien on the Debtors' property as a matter of law when the Debtors filed for bankruptcy. The Trustee cannot take a property free and clear of a mortgage of which he had constructive notice.

570 F. App'x at 771.

We also reject the trustee's argument that our decision in *Miller v. Deutsche Bank Nat. Tr. Co. (In re Miller)*, 666 F.3d 1255 (10th Cir. 2012), compels a different outcome. *In re Miller* does not mention § 544. Instead, the issue was whether a party had standing to seek relief from the automatic stay to move forward with a foreclosure action without presenting proof that he could enforce the note: "Whether a party has standing to seek relief as a party in interest . . . is an issue distinct from whether that party's underlying claim is valid." *Id*. at 1261 n.4. *See also Trierweiler II*, 570 F. App'x at 773 ("The bankruptcy court's initial ruling [on standing] had little to do with the court's later determination that the Trustee could not avoid the enforceable mortgage.")

6

## Enforceability of the Mortgage

The trustee argues the mortgage was unenforceable for three reasons: (1) BAC, the mortgagee, did not hold the note on the filing date; (2) BAC was not entitled to enforce the mortgage under Wyo. Stat. § 34.1-3-301; and (3) the public record failed to disclose that either MERS or BAC were the agents of the note holder. These arguments lack merit.

As to the first argument, the *Trierweiler* decisions are on point and compel the conclusion that there has not been an impermissible "split" between the mortgage and note. As the BAP explained in *Trierweiler I*:

> In Wyoming, . . . the security follows the note. The Trustee has pointed to no Wyoming authority that prohibits the loan originator from agreeing to have someone other than the beneficial owner of the debt hold the mortgage and enforce the debt as its agent. We note that Wyoming has a statute that contemplates conveying real estate to a mortgagee in a representative capacity, which suggests that Wyoming allows original parties to a note and mortgage to name someone other than the noteholder as the mortgagee.

484 B.R. at 791 (footnotes omitted). It thus concluded "there is nothing impermissible in this arrangement." *Id*. at 792. And we affirmed this holding in *Trierweiler II*. *See* 570 F. App'x at 772-73.

Next, the trustee faults the bankruptcy court and the BAP for failing to analyze how Wyo. Stat. § 34.1-3-301 applies. The reason for this "omission" is simple—the statute concerns who can enforce a promissory note. *See, e.g., Veal v. Am. Home Mortg. Servicing, Inc. (In re Veal)*, 450 B.R. 897, 910 (B.A.P. 9th Cir. 2011) ("Article 3 [of the UCC] provides a comprehensive set of rules governing the obligations of parties on the Note, including how to determine who may enforce

7

those obligations and to whom those obligations are owed."). As explained previously, this case concerns an attempt by the trustee to avoid a properly perfected mortgage lien—not sorting out who is the proper party in interest in a suit to enforce a note or who is entitled to payment.

Last, the trustee makes a series of arguments concerning the lack of an agency relationship between BAC (and MERS before it) and the note holder as grounds to undermine the validity of the mortgage lien. Not only are these arguments wrong, but they are particularly disingenuous in light of the fact that the issue urged by the trustee and certified to Wyoming Supreme Court was that the agency relationship between the note holder and the mortgagee was not adequately described under Wyo. Stat. §§ 34-2-122 and 123. [2] Having received a response that the statutes do not apply, the trustee has shifted its position to argue that there was no agency relationship at all. In any event, the decisions in *In re Gifford* and *Trierweiler II* foreclose this "new" argument.

The issue before the Wyoming Supreme Court was whether the failure of the recorded assignments "first to MERS and then to BAC, [to] identify with specificity the terms of the agency relationship between the holder of the Note and the holder of the Mortgage [rendered them unenforceable under Wyo. Stat.] §§ 34-2-122 and 123." *In re Gifford*, 300 P.3d at 855. The court held that failure to comply with the statutory provisions did not render the mortgage unenforceable because "the purpose

---

[2] Wyo. Stat. Ann. §§ 34-2-122 and 123 contain certain requirements for instruments that convey real estate or interests therein to a trustee, agent, or a person acting in some other representative capacity.

8

and effect of [§§ 122 and 123] is to bar an undisclosed or improperly disclosed principal from questioning an agent's authority to transfer a property interest to a third party." *Id.*

In *Trierweiler II*, this court applied *In re Gifford* to reject the trustee's argument that the mortgage was unenforceable because it did not identify the relationship between the note holder and mortgage holder: "The Wyoming Supreme Court held that Wyo. Stat. §§ 34-2-122 and 123 are notice statutes intended to protect third parties from conflicting claims of a principal and agent, a situation not implicated in the present matter. The statutes therefore do not apply." 570 F. App'x at 773, n.5 (citation, internal quotation marks, and brackets omitted). The bankruptcy court followed the controlling law and concluded that the Wyoming statutes did not apply and the mortgage assignments were enforceable. *See* Aplt. App. at 236.

### *Preferential Transfer Under 11 U.S.C. § 547(b)*

The transfer of the mortgage from MERS to BAC was not a preferential transfer. Title 11 U.S.C. §547(b) provides that "the trustee may avoid any transfer of an interest of the debtor in property" under certain circumstances. Similarly, under the "strong arm" powers of 11 U.S.C. § 544(a), the trustee can "avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable," to certain actual or hypothetical creditors, or a bona fide purchaser. But in the context of whether the trustee could use his "strong arm" powers to avoid a mortgage lien, the BAP held in *Trierweiler I* that "the transfer of an interest in [a] [m]ortgage [is] merely an assignment from one creditor to another"—not a transfer of the debtor's

9

property or an obligation incurred by the debtor.  484 B.R. at 797.  We therefore agree with the bankruptcy court that "[t]he assignments did not constitute transfers of Mrs. Gifford's interest." Aplt. App. at 238.

The judgment of the bankruptcy court is affirmed.

Entered for the Court


Mary Beck Briscoe
Circuit Judge

10